IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**ARSENAL RESOURCES LLC,**

    **Plaintiff,**

v.                                        Civ. Action No. 1:20-cv-84
                                                           (Kleeh)

**JULIA CRIM,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION [ECF NO. 2]**

Pending before the Court is a Motion for Preliminary Injunction. For the reasons discussed here, the Court grants the motion.

**I.  PROCEDURAL HISTORY**

On May 1, 2020, the Plaintiff, Arsenal Resources LLC ("Arsenal"), filed a Complaint against the Defendant, Julia L. Crim ("Crim"). On May 4, 2020, Arsenal filed a Motion for Preliminary Injunction. United States District Judge Irene M. Keeley transferred the case to United States District Judge Thomas S. Kleeh on May 12, 2020. Crim has not responded to the motion or made any appearance in this matter to date.

The Court held a hearing on the motion on May 18, 2020, via video conference. Arsenal was represented by Matthew S. Casto and Tiffany Marie Arbaugh. In-house counsel for Arsenal was

present as well. Randy Nathaniel Skeen ("Skeen"), the current Director of Land at Arsenal, testified. Crim did not appear or participate in the hearing. The Court noted on the record that Crim received notice of the verified complaint, the motion, and the Court's order scheduling the hearing.[1]

## II.   FACTUAL BACKGROUND

Based on the pleadings and the testimony during the hearing, the Court finds the following set of facts. Crim owns two tracts of real property in Harrison County (the "Property") that are involved in this dispute. Compl., ECF No. 1, at ¶ 9. The Property is subject to an oil and gas lease (the "Lease"), dated July 12, 1961, between Crim and Union Carbide Corporation ("Union Carbide"). Id. at ¶ 10 (Ex. C, ECF No. 1-3). River Ridge Energy, LLC ("River Ridge") is Union Carbide's successor in interest and current holder of the Lease. Id. Crim also signed an Amendment and Ratification of the Lease on August 14, 2012. Id. ¶ 11 (Compl. Ex. D, ECF No. 1-4).

---

[1] In the Court's order scheduling the hearing, the Court included the Zoom video conference link. The order also included a dial-in phone number that participants could use. The Court ordered counsel for Arsenal to provide Crim with a copy of the order scheduling the hearing and to certify with the Court that it had done so. Arsenal filed said notice on May 15, 2020, stating that it had sent Crim notice by both email and Federal Express, overnight delivery. See ECF No. 10.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION [ECF NO. 2]**

The Lease provides that River Ridge has the sole right to enter the Property

> for the purpose of searching for, exploring, drilling and operating for, producing and marketing oil, gas, natural gasoline, casinghead gas, casinghead gasoline, and any and all other products of any well located on said land, and of laying pipe lines and gathering systems, and building tanks, stations, telephone, telegraph and electric power lines, houses for gates, meters and regulators with all other rights, rights of way, privileges, appliances and structures necessary, incident or convenient for the operation of this land alone and conjointly with neighboring lands . . . .

Compl. Ex. C, ECF No. 1-3. River Ridge authorized Arsenal to obtain a Well Work Permit to drill and operate natural gas wells (known as the "Pritt Wells"). See Compl., ECF No. 1, at ¶ 13.

Arsenal and Crim also entered into a Surface Use and Compensation Agreement ("SUCA"). Id. ¶ 14 (Ex. E, ECF No. 1-5). As consideration for the execution of the SUCA, Arsenal paid Crim $65,710.00, which Crim received and accepted. Id. ¶ 16. Pursuant to the SUCA, Arsenal constructed a well road and staging area on Crim's surface.[2] Id. ¶ 15. The staging area is used for truck staging and offloading, and Skeen testified that

---

[2] The SUCA states that "Arsenal intends to construct a well access road on the surface of real property described herein . . . ." See Compl. Ex. E, ECF No. 1-5, at ¶ 1. The SUCA describes property shown at Exhibit A to the SUCA, which depicts where the staging area would be constructed.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION [ECF NO. 2]**

it is used for maintenance purposes. It is used to store and move equipment — drilling rigs, heavy trucks, bulldozers, backhoes, pipe equipment, etc. — and to coordinate traffic that moves along the access road. If the access road is congested, the staging area can be used to park trucks until the road is cleared. These areas are necessary for Arsenal's operations.

In mid-to-late November 2019, Arsenal discovered other items on the access road and/or staging area: a recreational vehicle (a "camper"), two or three other vehicles, a few trailers, and "random junk." Water was flowing onto the staging area from one of the vehicles. Skeen has been to the location numerous times. A representative of Arsenal most recently visited the area on Friday, May 15, 2020. This representative took a photograph, which was admitted into evidence as Hearing Exhibit D (ECF No. 12-4). Skeen testified that the placement of these items on the staging surface interferes with Arsenal's ability to use the space. He also testified that it is a safety concern to have these items on Arsenal's active site along with Arsenal's large equipment. He stated that Arsenal needs to use these areas as soon as possible.

Arsenal has contacted Crim on several occasions regarding these items — by phone call, certified letter, and text message — and Crim has refused to remove the items. Arsenal's

full use of these areas requires that these items be removed. Based on these facts, Arsenal brings the following causes of action:

> (I)   Preliminary Injunction
> (II)  Permanent Injunction
> (III) Breach of Contract

### III. DISCUSSION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To succeed on a motion for preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20. Based on the complaint, motion, accompanying memorandum, exhibits, and hearing testimony, Arsenal is entitled to a preliminary injunction.

**A.   Likelihood of Success on the Merits**

Arsenal has made a clear showing that it would likely be successful on the merits. At issue is whether the Lease, the amendment to it, and the SUCA provide Arsenal with the express rights to use the land as proposed. "Under West Virginia law, an oil and gas lease is both a conveyance and a contract." SWN

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION [ECF NO. 2]**

Prod. Co., LLC v. Edge, No. 5:15CV108, 2015 WL 5786739, at *4 (N.D.W. Va. Sept. 30, 2015) (citing Bryan v. Big Two Mile Gas Co., 577 S.E.2d 258, 265 (W. Va. 2001)). Therefore, principles of contract law govern their interpretation. See Iafolla v. Douglas Pocahontas Coal Corp., 162 W. Va. 489, 250 S.E.2d 128 (1978) (applying contract principles to an oil and gas lease). To form a valid, enforceable contract, there must be "competent parties, legal subject-matter, valuable consideration, and mutual assent." Syl. Pt. 5, Virginian Export Coal Co. v. Rowland Land Co., 100 W. Va. 559, 131 S.E. 253 (1926). A prima facie breach of contract claim under West Virginia law requires

> (1) that there is a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result.

Corder v. Antero Res. Corp., 322 F. Supp. 3d 710, 717 (N.D.W. Va. 2018). "[A] valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. Pt. 1, Cotiga Dev. Co. v. United Fuel Gas Co., 147 W. Va. 484, 128 S.E.2d 626 (1962).

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION [ECF NO. 2]**

The Lease, the modification to it, and the SUCA are valid, enforceable contracts. They expressly provide for Arsenal's right to use the access road and staging area for its oil and gas production. Crim has breached the contracts by preventing Arsenal from utilizing the access road and staging area. Arsenal has been damaged by this because it is prevented from exercising its contractual rights for which is has paid a considerable amount of money. For these reasons, Arsenal has made a clear showing that it is likely to succeed on the merits in its breach of contract claim.

**B.   Irreparable Harm**

Arsenal will suffer irreparable harm in the absence of injunctive relief. Generally, economic damages are not sufficient to establish irreparable harm. See Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017) ("Mere injuries, however substantial, in terms of money, time and energy expended in the absence of [an injunction] are not enough.").

The Court makes this finding based, in part, on the safety issues that have arisen due to Crim's interference with the access road and/or staging area. Skeen testified that due to Crim's placement of items on these areas, there is insufficient room for Arsenal to move in and out. This Court has previously considered safety as a factor supporting irreparable harm. See

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [ECF NO. 2]**

Dominion Energy Transmission, Inc. v. 0.11 Acres of Land, No. 1:19CV182, 2019 WL 4781872, at *6 (N.D.W. Va. Sept. 30, 2019) (finding that Dominion faced irreparable harm without an injunction and noting that "if left unchecked, the slip will threaten the safety of Dominion employees, who work in close proximity to heavy machinery").

Arsenal is also being denied the benefit of the real property rights expressly granted to it by terms of enforceable contracts, and this is not correctable with monetary damages. See id. ("[I]t is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute."). Further, the Supreme Court of Appeals of West Virginia has held that "[i]njunction is a proper remedy to prevent the maintenance of a wrongful obstruction of a private way." Syl. Pt. 2, Knotts v. Snyder Enters., Inc., 170 W. Va. 727, 296 S.E.2d 849 (1983) (citing Syl. Pt. 2, Flaherty v. Fleming, 58 W. Va. 669, 52 S.E. 857 (1906)). Moreover, the harm is actual and imminent. Therefore, Arsenal will suffer irreparable harm in the absence of an injunction.

### C. Balance of Equities

The balance of equities tips in Arsenal's favor. This Court has previously found:

> When weighing the parties' respective injuries and balancing the equities to determine whether a preliminary injunction should be issued, the court should consider the following: (1) the relative importance of the rights asserted and the act sought to be enjoined; (2) the preservation of the status quo; and (3) the balancing of damage and convenience generally.

Edge, 2015 WL 5786739, at *6 (citing Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42, 45 (4th Cir. 1932)). The agreements in place — the Lease, modification, and SUCA — are enforceable. Arsenal is merely seeking to exercise its express rights pursuant to these valid contracts, where Crim is being asked to remove personal belongings from a location at which she was not entitled to place them. On this and all issues raised in the motion, Crim has opted to make no argument on her behalf. In granting a preliminary injunction for Arsenal, the benefit to Arsenal would not be disproportionate to the injury for Crim. Therefore, the balance of equities weighs in Arsenal's favor.

### D. Public Interest

The public interest weighs in favor of granting a preliminary injunction. Both by statute and by court decision, the public policy in West Virginia is to encourage the

exploration and development of natural resource interests. The West Virginia Legislature has explicitly stated that "[a]llowing the responsible development of our state's natural gas resources will enhance the economy of our state and the quality of life for our citizens while assuring the long term protection of our environment." W. Va. Code § 22-6A-2(a)(8). The Legislature has further declared that "[e]xploration for and development of oil and gas reserves in this state must coexist with the use, agricultural or otherwise, of the surface of certain land and that each constitutes a right equal to the other." Id. § 22-7-1(a)(1). This interest has been recognized by this Court. See Edge, 2015 WL 5786739, at *6 (citing the same statutory provisions).

The public also has an interest in the enforcement of contracts. See Western Sur. Co. v. Rock Branch Mech., Inc., No. 5:16-cv-09550, 2016 WL 6462100, at *3 (S.D.W. Va. Oct. 31, 2016); see also Edge, 2015 WL 5786739, at *6 ("The public certainly has an interest in enforcing valid leases and ensuring that parties to those leases comply with their terms. The public also has an interest in respecting the valid property rights of others.").

As this Court has noted, "[t]he public does not, however, have an interest in condoning the violation of . . . leases or

similar agreements, or refraining to respect the agreed-to rights of the parties." Edge, 2015 WL 5786739, at *6. Here, Crim is interfering with Arsenal's contractual rights to use the Property to engage in oil and gas operations. The public interest weighs in favor of Arsenal.

This Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Fourth Circuit has made it clear that "[f]ailure to require a bond before granting preliminary injunctive relief is reversible error." Md. Dep't of Human Res. v. U.S. Dep't of Agric., 976 F.2d 1462, 1483 (4th Cir. 1992). Therefore, pursuant to Rule 65(c), Arsenal is **ORDERED** to post a security bond in the amount of **$5,000.00.** The relief provided by this Memorandum Opinion and Order shall not commence until the appropriate bond has been posted.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Arsenal's motion for a preliminary injunction [ECF No. 2]. Crim is hereby **ORDERED** to remove the items depicted in the May 15, 2020, photograph (Hearing Exhibit D (ECF No. 12-4)), along with any other items that may be in the access road or staging area, on

or before **5:00 p.m. on Friday, May 22, 2020.** Crim is hereby **ENJOINED** from placing any other items in the staging area or access road. Counsel for Arsenal is **ORDERED** to provide Crim with a copy of this Memorandum Opinion and Order, along with a copy of the photograph from May 15, 2020 (Hearing Exhibit D), and shall certify via written notice filed with the Court that these documents have been served upon her.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: May 18, 2020

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE